J-S64010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCUS TEAGUE | : | |
| | : | |
| Appellant | : | No. 3248 EDA 2017 |

Appeal from the Judgment of Sentence February 18, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002400-2014,
CP-51-CR-0002401-2014, CP-51-CR-0002405-2014,
CP-51-CR-0002406-2014, CP-51-CR-0002408-2014,
CP-51-CR-0002409-2014, CP-51-CR-0002410-2014,
CP-51-CR-0002411-2014, CP-51-CR-0003291-2014

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:               **FILED FEBRUARY 19, 2019**

Marcus Teague appeals from the aggregate judgment of sentence, composed of sentences entered at nine separate docket numbers, of twenty to forty years of incarceration, followed by seven years of probation, imposed after he pled guilty to multiple counts of robbery, possession of a firearm prohibited, and firearms not to be carried without a license.[1]  We affirm.

_____

[1] This Court issued a rule to show cause why the appeal should not be quashed for failure to file separate notices.  **See** Pa.R.A.P. 341, Note.  **See also Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) (holding, prospectively, that appellants are required to file separate notices of appeal at each docket number implicated by an order resolving issues that involve more than one trial court docket).  In his response, Appellant indicated that he did in fact file a notice at each docket number, although each was identical

Between October 25, 2013, and November 3, 2013, Appellant perpetrated ten robberies involving twelve victims. The majority were committed on a single day. Some of the robberies were at knifepoint, others at gunpoint. One victim sustained injuries after Appellant tackled him to the ground and hit him on the head. Appellant's crime spree ended when he was apprehended while fleeing from a final robbery.

Appellant entered an open guilty plea to ten counts of robbery, five counts of possession of a firearm prohibited, five counts of carrying a firearm without a license, and six counts of possession of an instrument of crime ("PIC"). At sentencing on February 18, 2015, the trial court, for the most part, imposed at each docket number a sentence of ten to twenty years of incarceration for each robbery with a consecutive term of five to ten years for prohibited possession of a firearm, followed by seven years of probation for carrying a firearm without a license and no further penalty for PIC. In the case that involved two separate robberies, the trial court imposed consecutive terms of ten to twenty years of incarceration for each, followed by the same consecutive sentences ordered for the other crimes in the other cases. As the trial court indicated that the sentence in each case was to be served

and listed all involved docket numbers. This Court discharged the rule for the issue to be decided by the merits panel. Our review of the trial court's separate dockets supports Appellant's contentions. Moreover, even if it did not, the *Walker* Court indicated that its ruling, handed down after Appellant appealed, was to be applied prospectively. Therefore, we see no basis to quash the appeals.

concurrently with those in the other cases, the result was an aggregate sentence of twenty to forty years of imprisonment followed by seven years of probation.

Appellant's motion for reconsideration of sentence was denied on March 20, 2015. Appellant filed no direct appeal. Following the filing of a timely PCRA petition, Appellant's direct appeal rights were reinstated, after which he filed the instant timely appeal.

Appellant presents one question for our review: "Did the Lower Court err in failing to reconsider the Appellant's sentence after a motion was filed arguing that the court failed to consider the Appellant's acceptance of responsibility and his remorse?" Appellant's brief at 25

Appellant presents a challenge to the discretionary aspects of his sentence. The following principles apply to our consideration of whether Appellant's claim is viable.

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa.Super. 2014) (citations omitted).

Appellant filed a motion for reconsideration of his sentence, and a timely notice of appeal after his direct appeal rights were reinstated. Appellant's brief contains a statement of reasons relied upon for his challenge to the discretionary aspects of his sentence as required by Pa.R.A.P. 2119(f). As to whether Appellant's claim presents a substantial question, he avers that the trial court "failed to state an adequate basis for the sentence imposed at the sentencing" hearing, and that his aggregate sentence is excessive and "grossly disproportionate with the crime he committed." Appellant's brief at 29.

We conclude that Appellant has raised a substantial question, and hence proceed to address the merits of his claim. *See*, *e.g.*, *Commonwealth v. Vega*, 850 A.2d 1277, 1281 (Pa.Super. 2004) (determining the appellant raised a substantial question with the claim that the sentence was grossly disproportionate to "the facts surrounding the criminal episode and his background"); *Commonwealth v. Simpson*, 829 A.2d 334, 338 (Pa.Super. 2003) (holding substantial question was presented by allegation that trial court failed to state sufficient reasons for the sentence imposed).

The following principles apply to our substantive review of Appellant's claim. "When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the

defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1134 (Pa.Super. 2009). "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." ***Commonwealth v. Macias***, 968 A.2d 773, 778 (Pa.Super. 2009). Rather, we review the trial court's determination for an abuse of discretion.

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Antidormi***, 84 A.3d 736, 760 (Pa.Super. 2014).

A trial court's sentence "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). "When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." ***Id***. at 761 (citations and quotation marks omitted).

Appellant acknowledges that each individual sentence he received was within the guideline ranges. Appellant's brief at 31. However, he contends that the consecutive structure of "many of the sentences" resulted in an

"extreme" aggregate sentence. *Id*. Appellant further asserts that the court failed to consider Appellant's expressed remorse, or that, by entering open guilty pleas in all nine cases, he spared the Commonwealth and the victims "the expense and trauma of a trial." *Id*.

Appellant's claims are belied by the record. The sentencing hearing was conducted after a presentence investigation and the court's review of the resulting report. Further, the transcript from the sentencing hearing reveals the following. The trial court was advised that Appellant has an extensive criminal history dating back to 1989. N.T. Sentencing, 2/18/15, at 9-11. Appellant had two dozen prior convictions, resulting in his having been incarcerated twenty-two times, the longest term having been eight to eighteen months. *Id*. at 10-11, 26. Appellant violated probationary sentences seven times, and committed the robberies at issue while under a sentence of intermediate punishment. *Id*. at 11. With a prior record score of repeat felony offender ("RFEL"), the sentencing guidelines called for incarceration of ninety to 102 months for each of the robberies committed at gunpoint. *Id*. at 9-10. With the "multiple, multiple opportunities" to reform given to Appellant in the past, the Commonwealth sought an aggregate sentence of twenty to forty years. *Id*. at 13.

The court also considered letters from Appellant's family members, in which they indicated that Appellant had stolen from "family, friends and strangers," that they had been awaiting word that Appellant was dead or in

jail, and were relieved to learn that he was in custody rather than "on drugs or dead." *Id*. at 13-14.

During his allocution, Appellant apologized to the victims and acknowledged having "a terrible drug problem." *Id*. at 22. Appellant spoke of past efforts to stay clean, detailing periods during which he went into recovery, had many consecutive negative drug screens upon release, and had attended college classes. *Id*. at 22-23. Appellant explained that, after he had to leave his brother's home, he was homeless and unable to find a job; thereafter, "these robberies started occurring because I was on the streets doing drugs." *Id*. at 24. Appellant indicated that he had resisted the compulsion to use drugs for more than a year while attending Narcotics Anonymous meetings, explaining "[i]nside the jails, I get into it, but I need a structure whereas though it will help me with my drug addiction. Without the drugs, I wouldn't be doing this." *Id*. at 27.

The trial court heard additional mitigating evidence. Specifically, the court was advised that Appellant's father was not involved in his life, and did not acknowledge Appellant until he was in his forties. *Id*. at 29. Appellant had been spending time with his family and children, but both his mother and father died "and then everything went downhill." *Id*. at 27. Counsel for Appellant also highlighted that Appellant had been diagnosed with bipolar disorder within the past ten years, that he had some periods of treatment, and was "now getting treatment in jail." *Id*. at 33. Counsel therefore

indicated that "mental health has to be a component" in the court's decision.

***Id***.

Before imposing Appellant's sentence, the trial court stated as follows:

I've looked at the sentencing guidelines. I've taken into consideration the presentence investigation [report], mental health evaluation. Taking into consideration that the defendant pled guilty today. I've taken into consideration the victim's impact who was here today who come forward to speak. I've taken into consideration that moneys were taken, weapons were used. I've taken into consideration the defendant's been before [me o]n at least two prior occasions. I've taken into consideration his long criminal record. I've taken into consideration that his brothers and sisters have written letters about him and that his father walked out. His mother passed away, but he needs help. He's in a life of crime.

So, I've factored all of that and I factored in a sentence for the protection of the public, punishment, rehabilitation that will be the basis of my sentence.

***Id***. at 34-35.

As the foregoing indicates, the trial court clearly did consider and weigh all relevant factors. ***See***, ***e.g.***, ***Commonwealth v. Kitchen***, 162 A.3d 1140, 1147 (Pa.Super. 2017) (noting that, when a trial court has reviewed a presentence investigation report, it is presumed that it properly considered and weighed all relevant sentencing factors). Based upon the circumstances, the trial court determined that the mitigating evidence was insufficient "to overcome the abundant aggravating factors present in this case." Trial Court Opinion, 12/11/17, at 8. Time and again, Appellant was given opportunities to pursue recovery and reform his behavior, but, as Appellant himself acknowledged, he has been unable to maintain sobriety when he is not in the

structure of total confinement.  Further, as the trial court summarized in its opinion,

> absolutely everything about his course of conduct, from his criminal record spanning at least 25 years, to choosing to commit multiple armed robberies, to possessing firearms even after numerous previous arrests disqualifying him from possessing a firearm, indicates . . . that [Appellant] does not understand the gravity of his actions and is unwilling to comport his behavior with the confines of the law and the most basic expectations of society.

*Id*.

Upon this record, we conclude that Appellant has failed to show any abuse of discretion in the trial court's decision to impose an aggregate term of incarceration of twenty to forty years followed by seven years of probation. *Accord Commonwealth v. Crork*, 966 A.2d 585 (Pa.Super. 2009) (finding no abuse of discretion in above-guidelines sentence for robbery defendant given that his prior record evidenced his refusal to abide by the rules of society and that prior attempts at drug and alcohol rehabilitation had been unsuccessful).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/19