J-S48016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| AUDREY OGDEN | |
| Appellant | No. 32 MDA 2017 |

Appeal from the Judgment of Sentence September 21, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0006922-2015

BEFORE:  OTT, STABILE, and PLATT, [*] JJ.

MEMORANDUM BY STABILE, J.:　　　　　　　**FILED OCTOBER 16, 2017**

Appellant, Audrey Ogden, appeals from the September 21, 2016 judgment of sentence entered in the Court of Common Pleas of Dauphin County ("trial court") sentencing her to three months of unsupervised probation and fines for defiant trespass and disorderly conduct.[1]  Upon review we affirm.

The trial court summarized the factual and procedural history of the matter as follows.

> Officer Ryan Fetzer was the sole Commonwealth witness at trial.  On September 24, 2015, he was dispatched to the plasma center in the Uptown Plaza for an unruly customer who was

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3503(b)(1)(i) and 18 Pa.C.S.A. § 5503(a)(4), respectively.

trespassing and would not leave. He testified, over a hearsay objection, that an employee of the center informed him that a customer was being unruly and has been refusing to leave for approximately an hour prior to his arrival. Fetzer's testimony was permitted to explain his subsequent course of conduct.

Per Fetzer's understanding, initially there was confusion over whether [Appellant] was allowed to donate that day and thus be present in the center, but ultimately it was confirmed that she was permitted to donate. That is to say, she initially had permission to be there. He did not observe her doing anything illegal.

Fetzer went to the back of the center to where [Appellant] was sitting. He made contact and instructed her that the center wanted her to leave and that she wasn't allowed on the premises. [Appellant] refused to answer, she was sitting in a chair, not hooked up to any equipment, on her phone with her computer open on her lap. He requested that she hang up the phone and speak with him several times and asked her to leave. She finally hung up the phone, told Fetzer that she did not have to listen to him and that the police and plasma center were doing something illegal. "So she continued to sit there. And then that's when I told her, 'Listen. The plasma center had called. They requested that you leave.'"

He specifically asked her several times to leave – it took her at least 10 minutes to finally leave. Once [Appellant] began to pack up and leave, Fetzer told her that he would not handcuff her outside, but that he needed to speak to her. He specifically told her several times that she was not free to leave once they exited the building.

Upon exiting the building, [Appellant] began quickly walking away from him. Fetzer called out to her and commanded her to stop several times but she continued to ignore him. Fetzer grabbed the handle on the back of her backpack to stop her from leaving. She began screaming and yelling at him. Appellant then began flailing her arms and trying to get away. She was yelling obscenities so loudly that people began to come out [(sic)] the various stores in the Uptown Plaza to see the commotion. His back up arrived and together they handcuffed [Appellant] while she continued to be uncooperative and yell.

[Appellant] also testified at trial. She explained the procedure when donating. Regular clients enter the center, register at an electronic kiosk and wait for a nurse to call you back. A nurse checks to make sure that your levels are acceptable for donation. Only those permitted to donate are allowed in the back. As a regular donor, [Appellant] went through the usual routine on the date in question and was told she was fine to donate so she went back to the medical area to wait.

She waited and was called back to review her medical form. The nurse on duty told her that she was only allowed to give a blood sample. [Appellant] explained that she had been cleared and when the nurse disagreed [Appellant] asked to see a manager. The nurse identified the manager and [Appellant] sat down and waited to be called to the donation area. She was called back and while she sat there she picked up her chart, looked through it and found the page where it said she was reinstated to donate and took a picture of it. Some nurses where [(sic)] taking the picture and took the chart away and told her she wasn't allowed to take pictures; though they did admit she was permitted to donate that day and that a mistake had been made. At that point, Appellant took out her cell phone and laptop and attempted to file a formal complaint.

At this point, Officer Fetzer arrived. [Appellant] claims that she did respond to his questions while in the center. Per her recollection he arrived, told her she needed to get off the phone and she kept telling him that she was not on the phone and asking him if he needed her to leave.

Before she was able to pack up her stuff, he said "Well I'm about to snatch you in a second." She felt threatened and told him that wasn't necessary. She asked him again if he was asking her to leave and he said yes. She was trying to explain what was going on when he told her to shut her mouth. When she got outside, she went to unlock her bicycle when he grabbed her backpack which scared her due to the previous threat. She began to call for help. She wanted the people already outside to watch what was happening because she didn't understand why he grabbed her.

Trial Court Opinion, 2/2/17, at 1-4 (internal citations omitted).

A bench trial was held on September 21, 2016, at the conclusion of which Appellant was found guilty of summary defiant trespass and summary disorderly conduct. The trial court sentenced Appellant the same date. On November 10, 2016, Appellant filed a *pro se* application for leave to appeal *nunc pro tunc*. The trial court granted said motion on December 13, 2016. Appellant, through counsel, filed a notice of appeal *nunc pro tunc* on December 29, 2016. On January 3, 2017, the trial court directed Appellant to file a concise statement of errors complained of on appeal. Appellant complied on January 24, 2017, and the trial court issued a Pa.R.A.P. 1925(a) opinion on February 2, 2017.

Appellant raises two issues on appeal, which we repeat verbatim.

I.    Was not the evidence insufficient to establish the offense of defiant trespass occurring a plasma donation center when there was no competent evidence that an employee of the plasma donation center ordered [Appellant] to leave the premises?

II.   Did not the court err in overruling [Appellant's] objection to the admission of out-of-court statements of employees of the plasma donation center when such statements constituted hearsay not subject to any exception?

Appellant's Brief at 4 (some capitalization omitted) (sic).

Appellant's first claim is a challenge to the sufficiency of the evidence. It is well established that

> our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it established each

- 4 -

material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability can be drawn from the combined circumstances.

… Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Kitchen*, 162 A.3d 1140, 1143-44 (Pa. Super. 2017) (quoting *Commonwealth v. Tukhi*, 149 A.3d 881, 886-87 (Pa. Super. 2016) (internal citations omitted)). To establish that Appellant was guilty of defiant trespass the Commonwealth must prove that Appellant "1) entered or remained upon property without a right to do so; 2) while **knowing** that [s]he had no license or privilege to be on the property; and 3) after receiving direct or indirect notice against trespass." *Commonwealth v. Wanner*, 18 A.3d 714, 718 (Pa. Super. 2017) (emphasis in original) (quoting *Commonwealth v. Namack*, 663 A.2d 191, 194 (Pa. Super. 1995)).

Appellant asserts that there needed to be evidence presented that the plasma donation center asked her to leave, in addition to Officer Fetzer's testimony. Essentially, Appellant is challenging the notice element of defiant trespass. Appellant fails to cite any authority for the proposition that the officer's testimony that he asked her to leave is insufficient to meet the notice element; therefore, Appellant has waived this claim. *See* Pa.R.A.P.

- 5 -

2119; *see also Commonwealth v. Kearney*, 92 A.3d 51, 66 (Pa. Super. 2014). Nevertheless, we will address the merits of Appellant's suficency of the evidence claim.

On a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth. In the matter *sub judice*, Appellant was informed by Officer Fetzer that she was unauthorized to be at the plasma donation center. When viewed in the light most favorable to the Commonwealth, Officer Fetzer's testimony that he asked Appellant to leave is sufficient to establish, at the least, Appellant had indirect notice against trespass. Thus, Appellant's sufficiency claim fails.

Next, Appellant challenges the trial court's admission of Officer Fetzer's testimony explaining his course of conduct. Specifically, Appellant claims that Officer Fetzer's testimony, that an employee of the plasma center informed him Appellant was unruly and refused to leave, constituted hearsay. Our standard of review for an evidentiary ruling is well established.

> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the record.

*Commonwealth v. Biesecker*, 161 A.3d 321, 329 (Pa. Super. 2017) (quoting *Commonwealth v. Mickel*, 142 A.3d 870, 874 (Pa. Super. 2016)).

In the matter *sub judice*, Officer Fetzer testified, over a hearsay objection, that an employee of the center informed him that a customer was being unruly and has been refusing to leave for approximately an hour prior to his arrival. This testimony was used to establish Officer Fetzer's subsequent conduct. "It is well established that certain out-of-court statements offered to explain the course of police conduct are admissible because they are offered not for the truth of the matters asserted but rather to show the information upon which the police acted." ***Commonwealth v. Trinidad***, 96 A.3d 1031, 1037 (Pa. Super. 2014) (citing ***Commonwealth v. Weiss***, 81 A.3d 767, 806 (Pa. 2013) (quoting ***Commonwealth v. Chmiel***, 889 A.2d 501, 532 (Pa. 2005)). The trial court admitted the testimony of Officer Fetzer to explain his subsequent conduct, namely, informing Appellant that she was required to leave the premises, and not for the truth of the matter asserted, that the plasma donation center asked Appellant to leave. Therefore, the trial court did not err when admitting such testimony. Appellant's claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2017

- 7 -